UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

HORACE GIBSON,                      )
                                    )
                Plaintiff,          )
                                    )
        v.                          )        No.  1:09CV111 TIA
                                    )
MICHAEL ASTRUE, Commissioner        )
of Social Security,                 )
                                    )
                Defendant.          )

**MEMORANDUM AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

This cause is on appeal from an adverse ruling of the Social Security Administration.  The

parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**I.      Procedural History**

On November 3, 2005, Claimant Horace Gibson filed an application for Disability

Insurance Benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401.  (Tr. 83-

85).[1]  In the application, Claimant stated that his disability began on June 13, 2004, due to lung

disease, exposure to toxic gas and beryllium dust, bone disease, and left side nostril on nose

damaged.  (Tr. 83-85, 103-11).  On initial consideration, the Social Security Administration

denied Claimant's claims for benefits.  (Tr. 46-49).  Claimant requested a hearing before an

Administrative Law Judge ("ALJ").  (Tr. 51).  On November 13, 2007, a hearing was held before

an ALJ.  (Tr. 15-44).  Claimant testified and was represented by counsel.  (Tr.17-36, 39-43).

---

[1]"Tr." refers to the page of the administrative record filed by the Defendant with its Answer
(Docket No. 11/filed October 19, 2009).

Vocational Expert Gary Weimholt, M.S., CDMS, a qualified vocational expert, also testified at the hearing. (Tr. 36-39, 79-80). Thereafter, on May 27, 2008, the ALJ issued a decision denying Claimant's claims for benefits. (Tr. 6-14). After considering the medical records from Dr. Arnold S. Tepper dated March 6, 2009, the Appeals Council found no basis for changing the ALJ's decision and denied Claimant's request for review of the ALJ's decision on July 14, 2009. (Tr. 1-4,).[2] The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

## II.    Evidence Before the ALJ

### A.  Hearing on November 13, 2007

#### 1.  Claimant's Testimony

At the hearing on November 13, 2007, Claimant testified in response to questions posed by the ALJ and counsel. (Tr. 17-36, 39-43). At the time of the hearing, Claimant was fifty-seven years of age and his date of birth is February 10, 1950. (Tr. 21). Claimant is left handed. (Tr. 23). Claimant stands at five feet seven inches and weighs approximately 198 pounds. (Tr. 23). Claimant has sixteen years of education including a high school education and a Bachelor's Degree in Social Studies from a school in Mississippi. (Tr. 23, 35). Claimant is single and lives with his girlfriend in his home. (Tr. 21-22). Claimant owns the house. (Tr. 22). His girlfriend receives $600 a month in death benefits for her deceased husband. Claimant does not have any

---

[2]The undersigned interprets the Appeals Council's statement that the additional evidence did not provide a basis for changing the ALJ's decision a finding that counsel's letter and the medical exhibits attached thereto were not material. *See* Bergmann v. Apfel, 207 F.3d 1065, 1069-70 (8th Cir. 2000) (whether additional evidence meets criteria is question of law; to be material, evidence must be relevant to claimant's condition for time period for which benefits were denied, and must not merely detail after-acquired conditions or post-decision deterioration of pre-existing condition).

health coverage or income.  (Tr. 22).  In 1987, Claimant spent two days in jail after an altercation. (Tr. 23).  Claimant testified that his wife dismissed the charges.  (Tr. 24).

Starting in July 1989 until 2004, Claimant worked at Noranda Aluminum in New Madrid, Missouri.  (Tr. 24, 37).  While working at Noranda Aluminum, Claimant had health insurance. (Tr. 25).  His job duties included shoveling material into the pots to make aluminum.  (Tr. 26). Claimant then worked as a material handler driving a truck of crucibles full of aluminum for weighing at a scale.  (Tr. 27-28).  A crane would unload the cruce from the truck. (Tr. 28). Claimant would take a sample of the cruce and stamp it with numbers and then forward to the laboratory for testing.  (Tr. 28).  Claimant also filled fluoride buckets and put them in the pots as the treatment used in chemical processing for making aluminum.  (Tr. 28-29).  The buckets weighed about 28,000 pounds depending upon the sheets and the amount of fluoride.  (Tr. 29). Claimant testified this process emitted dust fumes.  (Tr. 29).  Claimant worked twelve-hour shifts. (Tr. 28).  Prior to that job, Claimant worked for Defender, a subsidiary company working for Proctor & Gamble from 1987-89.  (Tr. 30).  Claimant worked in quality control and tested the plastic bags used as packaging for diapers off the production lines.  (Tr. 30).  This job required Claimant to sit down most of the time.  (Tr. 31).  Claimant testified that he could not work the quality control job because of his lung problems and hypertension.  (Tr. 31).  Claimant testified that he experiences chest pain when just sitting.  (Tr. 31).

Claimant has filed a Worker's Compensation claim, and his claim is still pending.  (Tr. 25).


Claimant's medications include Hydrochlorothiazide and Aldoril.  (Tr. 31).  Claimant can hardly walk in the morning and has problems getting out of bed.  (Tr. 31).  Claimant experiences

pain in his legs when he first wakes up and then after he walks around, the pain subsides. (Tr. 34). Claimant testified that he thinks the exposure to the fumes and the Corticosteroids affected his joints in his knees and ankles. (Tr. 31). Taking his medications in the morning makes Claimant drowsy and so he has to lie down. (Tr. 34). Claimant limits his activities during the day to alleviate his chest pain. Claimant experiences chest pain four to five times during the day. (Tr. 34). His chest pain last from five to ten minutes. (Tr. 35). Claimant testified that his chest pain prevents him from working. (Tr. 34).

Counsel indicated that there have been no pulmonary function tests completed in the last three years and so he requested testing to determine the efficiency of Claimant's gas exchange and the level of lung functioning. (Tr. 32). Counsel indicated that Claimant's primary complaint is difficulty breathing when he engages in activity. (Tr. 32). The ALJ indicated that he would request pulmonary function testing subsequent to the hearing. (Tr. 33). Counsel requested that the ALJ leave the record open so that he could attempt to obtain further evaluations including stress testing. (Tr. 33).

As to his daily activities, Claimant testified that he brushes his teeth and takes his medications. (Tr. 36). After eating breakfast, he returns to the bedroom to lie down. Claimant feels the need to lie down because he has problems sleeping at night. (Tr. 36). Claimant testified that his current medications are Aldoril and Hydrochlorothiazide, but he stopped taking the Corticosteroids because he cannot afford the expense of $170 a month. (Tr. 41).

### 2. Testimony of Vocational Expert

Vocational Expert Gary Weimholt, a vocational rehabilitation consultant, testified in response to the ALJ's questions. (Tr. 36-39). The ALJ asked the vocational expert based on the

exhibit file with regard to vocational matters to determine what, if any, past work Claimant has performed. (Tr. 36). Mr. Weimholt opined that Claimant appeared to have worked primarily as a material handler and such position applies to many different industries including the aluminum production industry and is a heavy type of job, semi-skilled in nature. (Tr. 37). With respect to the Proctor & Gamble job, Mr. Weimholt explained that the title for the position is production inspector, sometimes a packing type of job, an unskilled job usually at the light exertional level, but some of the jobs can occur at a sedentary level of work.

The ALJ then asked Mr. Weimholt to assume a hypothetical individual with the age, education and work experience of Claimant with the RFC for sedentary work, the ability to lift/carry no more than ten pounds, to stand and/or walk about two hours in an eight-hour workday, and to sit at least six hours in an eight-hour workday. Further, the hypothetical individual must avoid extreme temperatures and moderate exposure to dust, smoke, gas, fumes, and pollutants. The ALJ asked Mr. Weimholt whether the outlined restrictions would preclude the hypothetical individual from performing any past work. Mr. Weimholt responded no. Next, the ALJ asked Mr. Weimholt to assume the same RFC and factors but he increased the exertional level to light, the ability to lift/carry to twenty pounds occasionally and ten pounds frequently, and stand and/or walk to six hours in an eight-hour workday. Once again, Mr. Weimholt indicated that the hypothetical individual would not be able to do any of the past work.

Mr. Weimholt testified that Claimant does not have transferable skills to either one of the hypothetical RFCs. (Tr. 38).

### 3. Open Record

The ALJ indicated that he would request two evaluations, a pulmonary function testing

and a cardiology evaluation by a board-certified cardiologist be completed.  (Tr. 39).  The ALJ explained that Disability Determination Services may or may not comply with his request.  (Tr. 39).  The ALJ urged Claimant apply for Medicaid and food stamps.  (Tr. 40).

In a letter dated March 10, 2008, the ALJ apprised Claimant's counsel that one of his requests he made to Disability Determination Services to schedule additional evaluations had been granted, and he proposed enter the additional evidence into the record.  (Tr. 128).  The additional evidence included a pulmonary function studies completed on December 20, 2007.  (Tr. 169-76).  The ALJ apprised Claimant's counsel that he proposed to enter the pulmonary function studies in the record after counsel's review.  (Tr. 128).  A review of the record shows that the ALJ timely submitted the evaluation.  (Tr. 169-76).  A review of the record shows that counsel did not submit a written response to the ALJ before he issued a decision denying Claimant's claims for benefits.

### 4.  Forms Completed by Claimant

In the Adult Function Report dated November 9, 2005, Claimant reported that his breathing problem limits his life activities.  (Tr. 95-102).  Claimant listed doing laundry, ironing, mowing the grass, washing the car, and doing household repairs as household chores he does as needed day to day.  (Tr. 97).  Claimant indicated that he can drive.  (Tr. 98).  Claimant goes grocery shopping at Wal-Mart sometimes twice a week for about an hour.  (Tr. 98).  Claimant is able to pay the bills and handle a savings account.  (Tr. 98).  Claimant indicated that he has to be careful around people because of his susceptibility to viruses from the illness he contracted at work.  (Tr. 99).  Claimant listed reading, watching television, and playing computer solitaire game as his interests.  (Tr. 101).

In the Adult Disability Report completed on December 28, 2005, Claimant reported being unable to work because of "lung disease, exposure to toxic gas and beryllium dust, bone disease, left side nostril on nose is damaged." (Tr. 104). Claimant reported experiencing breathing problems with any type of activity. Claimant reported that he stopped working when he "became real sick" after inhaling gases, toxic fumes, and Beryllium dust which caused Beryllium disease. (Tr. 104).

In the Disability Report - Appeal, Claimant reported having signs and symptoms of pulmonary hypertension and the diagnosis of beryllium disease from his workplace. (Tr. 121). Claimant reported having almost total loss of lung function. (Tr. 121).

In Claimant's Recent Medical Treatment form, Claimant indicated that Dr. Glenn told him if he failed to take his medicine, he would die and eventually, Claimant would have to have surgical repair of his hernia. (Tr. 125).

## III.    Medical Records

Dr. Ramiro Icaza of the Heartland Family Physicians treated Claimant for hypertensive follow-up on January 15, 2003. (Tr. 132). Claimant reported an episode of chest pain three days earlier but no shortness of breath. Dr. Icaza indicated that he would schedule a coronary calcium score and prescribed Toprol. On February 5, 2003, Dr. Icaza noted that Claimant has a severe CT coronary calcium score showing extensive plaque present and recommended a treadmill test. Claimant returned on September 22, 2003, for hypertensive follow-up. Dr. Icaza noted that Claimant did not get his treadmill test and he stopped taking his Toprol medication. Dr. Icaza diagnosed Claimant with hypertension and prescribed Toprol and Aldoril. On October 20, 2003, Claimant returned complaining of a cough. Dr. Icaza diagnosed Claimant with bronchitis and

rhinitis and prescribed Palgic, Avelox, and Pancof. (Tr. 132).

On June 14, 2004, Claimant reported having a cough for a week and being exposed to beryllium for about fifteen years two hours a day from dust, gas, and fumes at work. (Tr. 131). Claimant reported pain in knee after a fall at work. Examination showed clear lungs with no wheezes or rales. Dr. Icaza diagnosed Claimant with mild bronchitis and prescribed a Zithromax pack, Tessalon Perles for his cough, and Motrin. Claimant returned on June 16, 2004 and reported coughing problems and shortness of breath. Claimant reported concern about beryllium problems. Dr. Icaza recommended doing a chest x-ray and pulmonary function studies. (Tr. 131).

The chest x-ray completed on June 25, 2004, showed no evidence of acute distress. (Tr. 134). No focal area of consolidation or pleural effusion was revealed. (Tr. 134).

The pulmonary function test performed on July 5, 2004, lung volumes within normal limits. (Tr. 135). Dr. Khalid Khan noted that the pulmonary function test to be essentially within normal limits. (Tr. 135).

On July 7, 2004, Claimant sought treatment by Dr. Sarah Froemsdorf for productive cough. (Tr. 143). Claimant reported working at Noranda Aluminum and being exposed to lots of dust and different gases. Claimant reported not being required to wear a respirator at work for many years and wearing a mask for three years before the respirator. Examination of his lungs showed course with rales and wheezes throughout. Dr. Froemsdorf prescribed a breathing treatment using Pulmicort and Xopenex. Dr. Froemsdorf noted the treatment seemed to help Claimant considerably. Dr. Froemsdorf noted Claimant to have reactive airway disease/bronchitis and a cough. Dr. Froemsdorf decided to treat Claimant with Flonase and prescribed Spectracef

for ten days and an Advair inhaler twice a day. (Tr. 143).

On July 19, 2004, Claimant returned to Dr. Froemsdorf requesting a letter for work. (Tr. 142). Claimant reported damage to his vocal cords and reported not having this condition being checked by a doctor. Claimant reported exposure to beryllium. Claimant reported not much improvement since starting Advair and breathing treatments. Dr. Froemsdorf noted Claimant to be hoarse and his oropharynx red. Examination showed clear lungs in the posterior fields. Dr. Froemsdorf noted his lungs sound much better. Dr. Froemsdorf ordered chest x-rays and referred Claimant to Dr. Morgan and Dr. Graham, a pulmonologist.. Dr. Froemsdorf noted how she wrote a note in front of Claimant "stating that he was seen on 7/7 for bronchial irritation and congestion, burning in the eyes, nose, and vocal cords, along with hypertension.... His diagnosis was reactive disease and bronchitis. He was placed on antibiotics and is doing better." (Tr. 142). The x-ray showed Claimant's lungs to be well expanded and clear. (Tr. 144).

On referral by Dr. Sarah Froemsdorf, Dr. Adam Morgan evaluated Claimant on July 22, 2004, for his chronic voice changes with raw feelings in throat and chronic nasal congestion. (Tr. 137). Claimant reported a fourteen year exposure of fumes from aluminum manufacturing. (Tr. 138). Claimant reported toxic exposure to his eyes in June. Claimant reported being off work for a month due to pulmonary manifestations of inhaling chemicals at work. Claimant complained of chronic bronchitis with persistent dry cough. Claimant reported improving significantly after starting Advair. Dr. Morgan noted that Claimant has a significant history for reactive airway disease and hypertension. Examination showed true vocal cords to be mobile bilaterally with no evidence of lesion. Dr. Morgan found Claimant to be suffering from a chronic laryngitis which may be associated with inhalation of toxic fumes. Dr. Morgan instructed Claimant on laryngeal

hygiene, drinking plenty of water, and recommended trying Nexium or Prilosec for a month. (Tr. 138). Dr. Morgan encouraged Claimant to avoid inhaling the fumes inasmuch as the fumes seem to bother his throat. (Tr. 139). Although Dr. Morgan noted that Claimant was to return for follow up in a month, there are no additional treatment notes from Dr. Morgan. (Tr. 139).

On August 3, 2004, Claimant returned for follow-up treatment with Dr. Froemsdorf and reported feeling better. (Tr. 141). Claimant indicated that Advair is working well. In the subjective section, Dr. Froemsdorf noted as follows:

> [Claimant] states that he has lost his job because he has refused to return to work until his lung problems are resolved. He indicates that he has been exposed to beryllium, which is an aluminum type agent that can be toxic. He notes that for years he has breathed the dust and had it all over his clothes even before the masks were provided or demanded. He then used masks, but they were the airtight masks that didn't work. The good masks were optional at that time. Now they are required. He indicates that he was exposed to fumes persistently, causing eye irritation, throat irritation, and lung irritation. He saw Dr. Icaza who did x-rays, followed by PFTs at the hospital, which were OK. Then he came to us because his lungs were not getting any better, and was diagnosed with bronchitis. He notes that one of the first symptoms of beryllium exposure is bronchitis, for which there is no cure, just treatment. He is unsure whether he will be able to keep his appointment with Dr. Graham since he has been fired.

(Tr. 141). Examination showed some mild wheezes but Dr. Froemsdorf noted much improvement. (Tr. 141). Dr. Froemsdorf continued Claimant with Advair and strongly encouraged Claimant to follow-up with Dr. Graham and have some aluminum testing run. (Tr. 141).

On September 22, 2004, Dr. Michael Brishetto of the Pulmonary Care of Eastern Missouri Clinic evaluated Claimant on a self-referral for a toxic gas inhalation. (Tr. 146). Claimant reported having a chronic cough and dyspnea on exertions with these symptoms worsening in May. Claimant reported his symptoms "got so bad that he stopped working on June 15, 2004."

(Tr. 146). Claimant reported being tested for beryllium with negative test results and having pulmonary function studies with okay results. (Tr. 146). Dr. Brishetto findings included ruling out reactive airways dysfunction syndrome and beryllium disease. (Tr. 147).

In a follow-up visit at Cape Urgent Care on November 18, 2004, Claimant had his hypertension reviewed. (Tr. 152, 177). An EKG had normal results. The doctor prescribed Divan. (Tr. 152, 177).

On December 20, 2004, Claimant received treatment at Cape Urgent Care for a blood pressure check. (Tr.151, 178).

On December 22, 2005, Dr. Anthony Keele at Cape Family Practice, evaluated Claimant on referral by Disability Determinations. (Tr. 154). Claimant reported being diagnosed by a pulmonologist in St. Louis with chronic bronchitis secondary to exposure to beryllium at Noranda Aluminum. (Tr. 154). Examination of his lungs showed clear to auscultation bilaterally and no use of accessory muscles. (Tr. 155). Dr. Keele observed Claimant to be comfortable at rest and with exertion. Dr. Keele diagnosed Claimant with chronic bronchitis. (Tr. 155).

In a follow-up visit on December 26, 2005, Claimant received treatment for his hypertension. (Tr. 179). The doctor added and/or increased his blood pressure medications. (Tr. 179).

Claimant returned for a blood pressure check up at Cape Urgent Care on February 7, 2006. (Tr. 180).

On April 21, 2006, Claimant received treatment at Cape Urgent Care including a blood pressure check. (Tr. 176, 181). Dr. Glenn Byron prescribed Toprol. (Tr. 176, 181).

On April 27, 2006, Dr. Frank Niesen examined Claimant for a consultative examination

for social security purposes.  (Tr. 163).  Claimant reported being terminated from his job on June 13, 2004, at Noranda Aluminum due to absenteeism.  (Tr. 163).  Claimant reported taking Enalapri for hypertension and Albuterol for heart problems.  (Tr. 163).  Dr. Niesen noted that both Claimant's chest and pulmonary function tests to be negative at that time.  (Tr. 165).  Claimant's chief complaints included shortness of breath, bad heart, indirect right inguinal hernia, hoarseness, non-productive cough, lip tremor, and intolerance to hot and cold.  (Tr. 165-66).  Dr. Niesen included in his diagnosis hypertensive cardiovascular disease, bronchitis, possibly from beryllium although beryllium tests were negative, and possible airway dysfunction syndrome.  (Tr. 167).

In a follow-up visit on April 30, 2007, at Cape Urgent Care, Claimant returned for blood pressure medications.  (Tr. 182).

On December 20, 2007, Claimant received pulmonary function tests during a consultative examination at St. Francis Medical Center as requested by Disability Determinations.  (Tr. 169-75).  The pulmonary function showed a forced expiratory volume-one value at 109 percent of the pre-drug predicted rate, a forced vital capacity value at 113 percent of the pre-drug predicted rate, and a forced expiratory volume-one\forced vital capacity value at 98 percent of the predicted value.  (Tr. 171-75).

## IV.    The ALJ's Decision

The ALJ found that Claimant meets the insured status requirements as of June 13, 2004, the alleged onset date, and his date of last insured is December 31, 2009.  (Tr. 10).  Claimant has not engaged in substantial gainful activity since the alleged onset of disability, June 13, 2004.  The ALJ found that the medical evidence fails to establish that Claimant has a severe medically

determinable impairment imposing significant limitations of function, for twelve months or more, since the alleged onset date and despite treatment. The ALJ concluded that Claimant does not have an impairment, or combination of impairments, that is severe for twelve months in duration. (Tr. 10). Accordingly, the ALJ found that Claimant was not under a disability from June 13, 2004, through the date of his decision. (Tr. 14).

**V.     Discussion**

In a disability insurance benefits case, the burden is on the claimant to prove that he or she has a disability. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). Additionally, the claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled. First, the ALJ must determine whether the individual is engaged in "substantial gainful activity." If she is, then she is not eligible for disability benefits. 20 C.F.R. § 404. 1520(b). If she is not, the ALJ must consider step two which asks whether the individual has a "severe impairment" that "significantly limits [the claimant's]

physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimant is not found to have a severe impairment, she is not eligible for disability benefits. If the claimant is found to have a severe impairment the ALJ proceeds to step three in which he must determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed or is equal to a listed impairment, the claimant will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed or is not the equivalent of a listed impairment, the ALJ moves on to step four which asks whether the claimant is capable of doing past relevant work. If the claimant can still perform past work, she is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform past work, the ALJ proceeds to step five in which the ALJ determines whether the claimant is capable of performing other work in the national economy. In step five, the ALJ must consider the claimant's "age, education, and past work experience." Only if a claimant is found incapable of performing other work in the national economy will she be found disabled. 20 C.F.R. § 404.1520(f); see also Bowen, 482 U.S. at 140-41 (explaining five-step process).

Court review of an ALJ's disability determination is narrow; the ALJ's findings will be affirmed if they are supported by "substantial evidence on the record as a whole." Pearsall, 274 F.3d at 1217. Substantial evidence has been defined as "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Id. The Court's review "is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the

'available zone of choice.'" <u>Bradley v. Astrue</u>, 528 F.3d 1113, 1115 (8th Cir. 2008) (quoting

<u>Nicola v. Astrue</u>, 480 F.3d 885, 886 (8th Cir. 2007)).  Although  the Court might have reached a

different conclusion had it been the initial finder of fact, this does not make the ALJ's decision

outside the 'zone of choice.'  <u>Id.</u>  Rather, "[i]f after reviewing the record, the court finds it is

possible to draw two inconsistent positions from the evidence and one of those positions

represents the ALJ's findings, the court must affirm the ALJ's decision.  <u>Goff v. Barnhart</u>, 421

F.3d 785, 789 (8th Cir. 2005).

In reviewing the Commissioner's decision, the Court must review the entire administrative

record and consider:

1.      The credibility findings made by the ALJ.

2.      The claimant's vocational factors.

3.      The medical evidence from treating and consulting physicians.

4.      The claimant's subjective complaints relating to
        exertional and non-exertional activities and impairments.

5.      Any corroboration by third parties of the
        claimant's impairments.

6.      The testimony of vocational experts when required which
        is based upon a proper hypothetical question which sets forth the claimant's
        impairment.

<u>Stewart v. Secretary of Health & Human Servs.</u>, 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting

<u>Cruse v. Bowen</u>, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

Claimant argues that the ALJ's decision is not supported by substantial evidence on the

record as a whole, because the ALJ failed to articulate a legally sufficient rationale for his finding

that Claimant has no severe impairments.  Claimant also contends that the ALJ failed to properly

assess his credibility.

A.     ALJ's Finding Claimant's Impairments Not Severe

Claimant argues that the ALJ erred in determining that his impairments of chronic

bronchitis and hypertension not to be severe despite ongoing treatment.  As noted above,

Claimant is disabled if he is unable to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which has lasted or can be expected to last

for a continuous period of not less than twelve months and which "results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable

clinic and laboratory diagnostic techniques."  Brown v. Shalala, 15 F.3d 97, 98 (8th Cir. 1994).

A review of the record shows that the ALJ found Claimant's impairments did not

significantly limit his ability to perform basic work-related activities and, therefore, the ALJ

determined that Claimant did not have any severe impairments.  Brown v. Bowen, 827 F.2d 311,

312 (8th Cir. 1987) ("'[O]nly those claimants with slight abnormalities that do not significantly

limit any 'basis work activity' can be denied benefits without undertaking' the subsequent steps of

the sequential evaluation process.'") (quoting Bowen v. Yuckert, 482 U.S. at 158).  At Step 2 of

the sequential evaluation, the ALJ determined Claimant's impairments not to be severe, finding

that there was no evidence that his symptoms and limitations were of sufficient severity to prevent

the performance of all sustained work activity.  Thus, the ALJ stopped at step two of the five-step

analysis the Commissioner applies, because he found Claimant does not suffer from a "severe"

impairment.  See 20 C.F.R. § 416.920(c); Bowen v. Yuckert, 482 U.S. at 140-42.

Denying a claim at step two of the sequential evaluation is justified only for "those

claimants whose medical impairments are so slight that it is unlikely they would be found to be

- 16 -

disabled even if their age, education, and experience were taken into account." Bowen v.

Yuckert, 482 U.S. at 153, 158; Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995). Moreover,

the Commissioner's own Social Security Ruling "states that an impairment is found not severe ...

when medical evidence establishes only a slight abnormality or a combination of slight

abnormalities which would have no more than a minimal effect on an individual's ability to work."

Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (quoting SSR 85-28); Gilbert v. Apfel, 175

F.3d 602, 604-05 (8th Cir. 1999).

      The burden of showing a medically determinable severe impairment is on Claimant.

Bowen v.Yuckert, 482 U.S. at 146 n.5 ("If the process ends at step two, the burden of proof

never shifts."). An impairment or combination of impairments is severe if it "significantly limits

[claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(c). The

medical evidence established that Claimant has no significant physical or mental disability.

Accordingly, the ALJ denied Claimant benefits at step two finding that Claimant's impairments

cannot be considered disabling, because his impairments would have no more than a minimal

effect on his ability to work. Stout v. Shalala, 988 F.2d 853, 855 (8th Cir. 1993). The sequential

process can be terminated at step two only in cases where the medical evidence establishes there

is no more than a minimal effect on Claimant's ability to work. There is no objective evidence on

the record that would indicate Claimant suffers from a severe impairment.

      After finding that Claimant has chronic bronchitis and a history of exposure to Beryllium,

the ALJ determined that Claimant's chronic bronchitis and Beryllium were all controlled through

treatment and stabilized by medications. Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007)

(noting that if impairment can be controlled by treatment, it cannot be considered disabling); Estes

v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (an impairment controlled by medication or treatment is not considered disabling); Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) (impairments controllable or amenable to treatment do not support finding of total disability); Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999).  In relevant part, the ALJ found that "despite allegations of Beryllium induced symptoms and complications, it is noted that chest x-rays on June 25, 2004 revealed no acute disease.  Pulmonary function testing in July 2004 revealed results 'essentially within normal limits.'" (Tr. 11).  On July 22, 2004, Claimant reported improving significantly after starting Advair and in a follow-up visit on August 3, 2004, Claimant reported feeling better and Advair working well.  (Tr. 11, 138, 141).  Although Claimant reported complaints of ongoing cough, wheezing, and shortness of breath during a consultative examination on December 20, 2007, on referral by Disability Determinations, the pulmonary function test results showed great pulmonary function.  (Tr. 12, 169-75).  The ALJ found that "[t]he nearly complete lack of documentation of even infrequent treatment sought for pulmonary/breathing complaints, from 2005 through the date of this decision, is very inconsistent with allegations of a severe impairment.  The undersigned finds the claimant has chronic bronchitis.  However, his allegations that it is severe and disabling are at great odds with the actual objective evidence.  The above facts indicate that bronchitis is not a severe impairment for twelve continuous months in duration." (Tr. 13).  Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (an impairment controlled by medication or treatment is not considered disabling); Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) (impairments controllable or amenable to treatment do not support finding of total disability);  Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999).  In particular, the ALJ noted that Claimant's infrequent treatment sought for respiratory complaints

to be extremely inconsistent with allegations of a severe breathing impairment lasting twelve months in duration. (Tr. 12). Claimant last received treatment for respiratory complaints on June 22, 2004, and did not receive any follow-up treatment except for consultative examinations of referral by Disability Determinations that were not for the purpose of treatment.[3]

Likewise, with respect to Claimant's hypertension, the record does not establish that his hypertension significantly limited his ability to do basic work activities. See 20 C.F.R. § 404.1521(a). Indeed, the medical record is devoid of complaints by Claimant showing how the symptoms of his hypertension would affect his ability to perform basic work activities. His blood pressure was 162/96 in September 2003; in June 2004, it was 170/90; in November 2004, it was 152/76; in December 2004, it was 170/100; in December 2005, it was 150/86 in the right arm and 146/90 in the left arm; and in May 2006, it was 149/80. (Tr. at 131-32, 151-52, 154-55, 166, 177-78). Most of Claimant's blood pressure readings were within normal range and only a few reached the mild to moderate stage. Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992) (high blood pressure reading of 170/90 indicates only moderate hypertension); Brown v. Heckler, 767 F.2d 451, 453 (8th Cir. 1985) (blood pressure which measures within the range of 140-180/90-

---

[3]The record is devoid of medical records for treatment of his bronchitis from September 22, 2004 through the date of the ALJ's decision. The ALJ noted that no physician had ever made any medically necessary restrictions, restrictions on his daily activities, or functional or physical limitations. Further, the ALJ noted that despite his allegations of persistent breathing problems and chronic bronchitis, Claimant has not received ongoing medical attention or treatment for his bronchitis. Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004) ("Infrequent treatment is also a basis for discounting a claimant's subjective complaints."); See Johnson v. Chater, 108 F.3d 942, 947 (8th Cir. 1997) (determining that failing to seek treatment was inconsistent with claimant's subjective complaints of disabling pain); Chamberlain v. Shalala, 47 F.3d 1489, 1495 (8th Cir. 1995) (failure to seek aggressive medical care is not suggestive of disabling pain); Walker v. Shalala, 993 F.2d 630, 631-32 (8th Cir. 1993) (lack of ongoing treatment is inconsistent with complaints of disabling condition).

115 is considered mild or moderate; moreover, claimant's hypertension does not qualify as a severe impairment under the Secretary's regulations because it did not result in damage to the heart, eye, brain, or kidney). To the extent that Claimant's hypertension is controlled by medications, impairments which are remediable by medication are not disabling. Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (noting that if impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (an impairment controlled by medication or treatment is not considered disabling); Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001) (impairments controllable or amenable to treatment do not support finding of total disability). The instant record shows that Claimant's hypertension was controlled on medication and had minimal impact on Claimant's ability to perform basic work activities. Based on the medical evidence, the ALJ concluded that Claimant does not have a medically severe impairment. The medical evidence shows that Claimant's pulmonary function testing to be generally normal and Claimant reporting a significant improvement in breathing after starting medication. Thus, it was proper for the ALJ to find his impairments to be controllable or amenable to treatment and thus do not support a finding of total disability. Hutton, 175 F.3d at 655. Indeed, as noted by the ALJ, no treating or examining doctor has found Claimant to be totally incapacitated over any significant length of time or ever placed any specific long-term limitations on Claimant's abilities to stand, sit, walk, bend, lift, carry, or do other basic exertional activities. The ALJ found that Claimant has not received regular medical attention or treatment for his bronchitis or that he has been refused medical treatment due to inability to pay.

Likewise, the medical evidence is devoid of any evidence showing that Claimant's conditions have deteriorated or required aggressive medical treatment although Claimant testified

otherwise at the hearing.  See Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (noting that if impairment can be controlled by treatment, it cannot be considered disabling); see also Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.").  The ALJ found that the medical evidence shows that no physician finding "that the claimant has had persistent and adverse side effects due to his prescribed medication, resulting in significant limitations of his functional capacity, which were incapable of being controlled by medication adjustments or changes.  The medical records do not document that any treating physician has ever found or imposed any significant mental or physical limitations upon the claimant's functional capacity for twelve consecutive months in duration." (Tr. 13).  The ALJ further noted that the medical records are devoid of findings by any treating physicians recommending "that the claimant cease working as of the alleged onset date and to remain off work for the next twelve months.  Outside the report of absenteeism, there is no evidence, ..., that establishes the claimant's work activity, as of the alleged onset date, was observed to have deteriorated due to any ailment related symptomology."  (Tr. 13).

The ALJ addressed the findings made by the physicians in their evaluations and various conclusions made therefrom.  The ALJ considered these conclusions in conjunction with the other evidence on the record as a whole and determined Claimant not to be disabled.  There is no objective medical evidence suggesting that Claimant's impairments or a combination of the impairments are significant enough to cause a disability precluding the performance of any substantial gainful activity.  The record supports the determination of the ALJ that Claimant is capable of engaging in substantial gainful activity.  The substantial evidence on the record as a whole supports the ALJ's decision.  Where substantial evidence supports the Commissioner's

decision, the decision may not be reversed merely because substantial evidence may support a different outcome. Woolf . Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993). Therefore, the ALJ's decision and conclusions are supported by substantial evidence on the record as a whole, and Claimant's claim is without merit.

The burden of showing a severe impairment at Step 2 of the sequential evaluation rests with the claimant, and the burden is not great. Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001); see also Gilbert v. Apfel, 175 F.3d 602, 604-05 (8th Cir. 1999) (court to apply "cautious standard" at Step 2 of evaluation process). In light of the evidence set out above, it cannot be said that the Commissioner's determination at Step 2 of the evaluation process that Claimant has failed to meet her burden of establishing that her impairments constitute severe impairments is not supported by substantial evidence of the record as a whole.

The undersigned may reject the ALJ's decision only if it is not supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is that which "a reasonable mind might accept as adequate" to support the Commissioner's conclusion. Smith v. Shalala, 987 F.2d 1371, 1373 (8th Cir. 1993). The Court may not substitute its own judgment or findings of fact when reviewing the record for substantial evidence. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

B.     Credibility Determination

Claimant contends that the ALJ failed to properly assess his credibility.

The determination of Claimant's credibility is for the Commissioner, and not the Court, to decide. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). The ALJ may not discredit Claimant's complaints of pain solely because they are unsupported by objective medical evidence.

O'Donnell v. Barnhart, 318 F.3d 811, 816 (8th Cir. 2003); Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). Instead, the ALJ must fully consider all of the evidence relating to the subjective complaints, including the Claimant's work record, the absence of objective medical evidence to support the complaints, and third party observations including treating and examining doctors as to:

1.      claimant's daily activities;

2.      duration, frequency and intensity of the pain;

3.      precipitating and aggravating factors;

4.      dosage, effectiveness and side effects of medication;

5.      functional restrictions.

Ford v. Astrue, 518 F.3d 979, 982 (8th Cir. 2008) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)). The ALJ may disbelieve the claimant's subjective complaints "if there are inconsistencies in the evidence as a whole." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004).

When determining a claimant's complaints of pain, the ALJ may disbelieve such complaints if there are inconsistencies in the evidence as a whole. Polaski, 739 F.2d at 1322. The ALJ must make express credibility determinations detailing the inconsistencies in the record that support the discrediting of the claimant's subjective complaints. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); see also Johnson v. Secretary of Health and Human Servs., 872 F.2d 810, 813 (8th Cir. 1989). "An ALJ must do more than rely on the mere invocation of Polaski to insure safe passage for his or her decision through the course of appellate review." Harris v. Shalala, 45 F.3d 1190, 1193 (8th Cir. 1995). Where an ALJ explicitly considers the Polaski factors but then discredits a

claimant's complaints for good reason, his decision should be upheld. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). However, the Eighth Circuit has held that an ALJ is not required to discuss each Polaski factor methodically. Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1966). The ALJ's analysis will be accepted as long as the opinion reflects acknowledgment and consideration of the factors before discounting the claimant's subjective complaints. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000); see also Brown, 87 F.3d at 966. The ALJ's credibility findings are entitled to deference if the findings are supported by multiple valid reasons. See Goff v. Barnhart, 421 F.3d 785, 791-92 (8th Cir. 2005); Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003) (if ALJ explicitly discredits claimant and gives good reasons for doing so, court will normally defer to credibility determination). The undersigned finds that the ALJ's credibility determination is supported by substantial evidence in the record as a whole.

In his decision the ALJ thoroughly discussed the medical evidence of record, the lack of ongoing medical evidence corroborating Claimant's subjective complaints, daily activities, and the testimony adduced at the hearing. See Gray v. Apfel, 192 F.3d 799, 803-04 (8th Cir. 1999) (ALJ properly discredited claimant's subjective complaints of pain based on discrepancy between complaints and medical evidence, inconsistent statements, lack of pain medications, and extensive daily activities). The lack of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995) (lack of objective findings to support pain is strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994) (the ALJ was entitled to find that the absence of an objective medical basis to support claimant's subjective complaints was an important factor in evaluating the credibility of her testimony and of

her complaints). The ALJ noted that although Claimant asserts that he is unable to work due to severe chronic bronchitis and hypertension, the clinical and objective medical findings are inconsistent with an individual experiencing totally debilitating symptomatology. In support, the ALJ cited the pulmonary test results showing good pulmonary functioning and the lack of ongoing treatment as being inconsistent with Claimant's allegations of a severe pulmonary impairment. The ALJ found that neither treating nor examining doctors imposed any significant physical limitations upon Claimant's functional capacity for twelve consecutive months in duration. Further, the record establishes that Claimant's hypertension is controlled by medication. The ALJ then addressed other inconsistencies in the record to support his conclusion that Claimant's complaints were not credible.[4]

Specifically, the ALJ noted that no treating physician stated that Claimant was disabled or unable to work during the relevant time period. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find disability a factor in discrediting subjective complaints). The lack of objective medical basis to support Claimant's subjective descriptions is an important factor the ALJ should consider when evaluating those complaints. See Stephens v. Shalala, 50 F.3d 538, 541 (8th Cir. 1995)(lack of objective findings to support pain is

_____

[4]The ALJ noted how Claimant's earning record shows a good work history up to and including his alleged onset date of disability. Nonetheless, the ALJ found that "any credibility it may afford the claimant pales when considered in light of all the factors noted [in his decision], which detract from the claimant's credibility." (Tr. 14). In particular, the ALJ cited "the objective medical evidence and lack of treatment are grossly at odds with the claimant's subjective complaints. No physician has indicated the claimant is disabled or cannot work at any job." (Tr. 14). Indeed, the ALJ concluded by noting how the pulmonary function testing requested by him subsequent to the hearing showed normal to better than normal pulmonary functioning. (Tr. 14).

- 25 -

strong evidence of lack of a severe impairment); Barrett v. Shalala, 38 F.3d 1019, 1022 (8th Cir.

1994)(the ALJ was entitled to find that the absence of an objective medical basis to support

claimant's subjective complaints was an important factor in evaluating the credibility of her

testimony and of her complaints).  In addition, the ALJ noted that no physician had ever made any

medically necessary restrictions, restrictions on his daily activities, or functional or physical

limitations.  Likewise, the medical evidence is devoid of any evidence showing that Claimant's

condition has deteriorated or required aggressive medical treatment although Claimant testified

otherwise at the hearing.  See Id.; Ply v. Massanari, 251 F.3d 777, 779 (8th Cir. 2001) (noting a

claimant's inconsistent statements as a factor to consider in determining claimant's credibility).

As demonstrated above, a review of the ALJ's decision shows the ALJ not to have denied

relief solely on the lack of objective medical evidence to support his finding that Claimant is not

disabled.  Instead, the ALJ considered all the evidence relating to Claimant's subjective complaints,

including the various factors as required by Polaski, and determined Claimant's allegations not to

be credible.  Although the ALJ did not explicitly discuss each Polaski factor in making his

credibility determination, a reading of the decision in its entirety shows the ALJ to have

acknowledged and considered the factors before discounting Claimant's subjective complaints.

See Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).  Inasmuch as the ALJ expressly

considered Claimant's credibility and noted numerous inconsistencies in the record as a whole, and

the ALJ's determination is supported by substantial evidence, such determination should not be

disturbed by this Court.  Id.; Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996).  Because the

ALJ gave multiple valid reasons for finding Claimant's subjective complaints not entirely credible,

the undersigned defers to the ALJ's credibility findings.  See Leckenby v. Astrue, 487 F.3d 626,

632 (8th Cir. 2007) (deference given to ALJ's credibility determination when it is supported by good reasons and substantial evidence); Guilliams v. Barnhart, 393 F.3d 798, 801(8th Cir. 2005).

The undersigned finds that the ALJ considered Claimant's subjective complaints on the basis of the entire record before him and set out the inconsistencies detracting from Claimant's credibility. The ALJ may disbelieve subjective complaints where there are inconsistencies on the record as a whole. Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). The ALJ pointed out inconsistencies in the record that tended to militate against the Claimant's credibility. See Guilliams, 393 F.3d at 801 (deference to ALJ's credibility determination is warranted if it is supported by good reasons and substantial evidence); see also Samons v. Astrue, 497 F.3d 813, 818 (8th Cir. 2007) (finding that substantial evidence supported the ALJ's decision where there were too many inconsistencies in the case). Those included Claimant's lack of functional restrictions by any physicians, his daily activities, lack of objective medical evidence, the failure to seek regular and sustained treatment, and the hearing testimony. The ALJ's credibility determination is supported by substantial evidence on the record as a whole, and thus the Court is bound by the ALJ's determination. See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006); Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992). Accordingly, the ALJ did not err in discrediting Claimant's subjective complaints. See Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001) (affirming the ALJ's decision that claimant's complaints of pain were not fully credible based on findings, inter alia, that claimant's treatment was not consistent with amount of pain described at hearing, that level of pain described by claimant varied among her medical records with different physicians, and that time between doctor's visits was not indicative of severe pain). The undersigned finds that substantial evidence supports the ALJ's finding the medical records do

not support the extent of Claimant's subjective complaints.  See Flynn v. Astrue, 513 F.3d 788, 792 (8th Cir. 2008) (standard of review; substantial evidence is enough that reasonable mind might accept it as adequate to support decision).

For the foregoing reasons, the ALJ's decision is supported by substantial evidence on the record as a whole.  See Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007) (when ALJ explicitly discredits claimant and gives good reasons for doing so, court will normally defer to his credibility determination).  Inasmuch as there is substantial evidence to support the ALJ's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently.  Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001).  Accordingly, the decision of the ALJ denying Claimant's claims for benefits should be affirmed.

Therefore, for all the foregoing reasons,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits be affirmed.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.


_____/s/ Terry I. Adelman_____
UNITED STATES MAGISTRATE JUDGE

Dated this   21st   day of September, 2010.